# Exhibit 1

WESTFIELD INSURANCE COMPANY,⁣   )
       Plaintiff,               )
                         )
   v.                       )      No. 1:16-cv-02269-TWP-MJD
                         )
BELL AQUACULTURE, LLC &       )
TCFI BELL SPE III, LLC,         )
     Defendants/Third-Party Plaintiffs.  )
                         )
   v.                       )
                         )
EARLY, CASSIDY & SCHILLING, INC.,  )
     Third-Party Defendant.        )

## AFFIDAVIT OF ROBERT DAVIS

I, Robert Davis, hereby state that I am an adult, over 18 years of age, and have personal knowledge and am competent to testify about the following facts:

1. I am the Chairman and Chief Executive Officer ("CEO") of Bell Aquaculture LLC ("Bell"). I have served in this role since January 1, 2015.

2. Beginning in 2005, Bell operated a commercial fish farm at its Albany, Indiana, facility. Bell grew, harvested, and processed fish, which were sold to various customers, including restaurants and grocery stores across the country.

3. Bell's facility consisted of several buildings, with each housing a different portion of Bell's operations. For instance, the Row 1 Building housed the hatchery and offices, while the Row 2 Building housed all of the fish feed and certain purge tanks, and the Row 3 Building housed the fish that were in their final stage of growth, prior to harvesting, processing, and sale, among other things.

4.　　In the early morning hours of July 22, 2015, the automatic transfer switch, which was to provide protection to the Row 3 Building in the event of a power outage (by transferring the electrical load to Bell's backup generator), failed (the "Incident").

5.　　This failure of the automatic transfer switch resulted in a fire and/or explosion, and the electrical load was never transferred to Bell's backup generator. Copies of photographs taken of the automatic transfer switch, after the fire and/or explosion, are attached hereto as **Exhibit A**.

6.　　When the transfer switch failed, much of the Row 3 Building lost electricity – including the tanks housing Bell's fish. Without electricity, the tanks could not recirculate water, introduce oxygen to the fish, and remove waste. As a result, approximately 800,000 of Bell's fish – all of which were nearly ready for harvesting, processing, and sale – died.

7.　　At the time of the Incident, Bell's commercial fish farm was insured by Westfield Insurance Company. The insurance policy at issue at the time of the Incident was Westfield's commercial insurance policy No. CAG 4 490 989, effective from August 15, 2014 to August 15, 2015 (the "Policy").

8.　　The Policy was simply a renewal of prior insurance policies issued by Westfield to Bell.

9.　　Both before the Incident, and after the Incident, Bell received assurances from its insurance broker, EC&S, that its fish were considered "stock" under the Policy's Business Personal Property coverage. Copies of e-mails Bell received from EC&S regarding this issue are attached hereto as **Exhibit B** and **Exhibit C**, respectively.

10. As a result of the loss of its fish, Bell submitted a claim for insurance coverage in the amount of $1,649,118.00, consisting of the loss of the fish inventory itself ($1,551,712.00), as well as the loss of the fish feed ingredient inventory ($97,406.00).

I affirm under the penalties for perjury that the foregoing facts are true and correct.

Dated this 28th day of September, 2017.

_____
Robert Davis

I\12382817.2

# Exhibit A



BELL0029321



BELL0029322



BELL0029323



BELL0029324



BELL0029325

# Exhibit B

| | |
|---|---|
| **From:** | Laura Baldwin <IMCEAEX-_O=FIRST+20ORGANIZATION_OU=EXCHANGE+20ADMINISTRATIVE+20GROUP+20+28FYDIBOHF23SPDLT+29_CN=RECIPIENTS_CN=CABFBB0DE1724A2FB340F2872DA8511E-LAURA@namprd18.prod.outlook.com> |
| **Sent:** | Wednesday, September 17, 2014 12:43 PM |
| **To:** | 'Michael A. Fragola' |
| **Subject:** | RE: Insurance |

Thank you Mike-

## Laura Baldwin
Director of Business Operations

+1 765.369.3126 Office
+1 765.369.2517 Fax



Cultivating the Future™
PO BOX 85
Redkey, IN 47373 USA

**www.bellaquaculture.com**

CONFIDENTIALITY NOTICE: This message is for the sole use of the intended recipients and may contain confidential and/or privileged information. Any unauthorized review; use, disclosure, distribution or copying is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Please be advised that E-mail and other electronic communications are not assured to be secure against unauthorized third party access or free from inaccuracies as information may be intercepted, manipulated, corrupted, lost or destroyed.

**From:** Michael A. Fragola [mailto:FragolaMA@ecsinsure.com]
**Sent:** Wednesday, September 17, 2014 12:41 PM
**To:** Laura Baldwin
**Subject:** RE: Insurance

The coverage for the stock or inventory is covered within the Business Personal Property limit - currently at $1.7 million. That limit is separate from the blanket limit on the buildings and equipment – that limit is $35.9 limit. All coverage at present is through Westfield. In terms of criteria, the fish are considered inventory under Business Personal Property.

Please let me know if you have any questions on this or If you need any additional information.

Thanks Laura.

Michael A. Fragola, CPCU, ARM, CIC
Vice President, Business Development

**From:** Laura Baldwin [mailto:Laura.Baldwin@bellaquaculture.com]
**Sent:** Wednesday, September 17, 2014 12:15 PM
**To:** Michael A. Fragola
**Subject:** Fwd: Insurance

How do I answer these questions?

Laura Baldwin
Director of Business Operations
BELL AQUACULTURE
+1 765.369.3126 Office
+1 765.369.2517 Fax

Begin forwarded message:

> **From:** Joe McElwee <Joe.McElwee@bellaquaculture.com>
> **Date:** September 17, 2014 at 12:14:14 PM EDT
> **To:** Laura Baldwin <Laura.Baldwin@bellaquaculture.com>
> **Subject: Insurance**
>
> Hi Laura
>
> Does Bell have stock insurance, and if so with who and what is the policy criteria?
>
> Joe McElwee
>
> General Manager
>
> +1 765.369.3115 Office
> +1 765.744.3210 Cell
> +1 765.789.6966 Fax
>
> 
>
> Cultivating the Future™
> PO BOX 85
> Redkey, IN 47373 USA
>
> **www.bellaquaculture.com**
>
> CONFIDENTIALITY NOTICE: This message is for the sole use of the intended recipients and may contain confidential and/or privileged information. Any unauthorized review; use, disclosure, distribution or copying is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Please be advised that E-mail and other electronic communications are not assured to be secure against unauthorized third party access or free from inaccuracies as information may be intercepted, manipulated, corrupted, lost or destroyed.

# Exhibit C

**From:** Bob Davis [mailto:Bob@bellaquaculture.com]
**Sent:** Thursday, August 13, 2015 5:59 PM
**To:** Krahulik, Angela Pease
**Subject:** FW: Bell Aquaculture - Property Loss 7/22/15

Redaction

**From:** Michael A. Fragola [mailto:FragolaMA@ecsinsure.com]
**Sent:** Thursday, August 13, 2015 5:43 PM
**To:** Bob Davis <Bob@bellaquaculture.com>
**Subject:** FW: Bell Aquaculture - Property Loss 7/22/15

From our attorney

**Michael A. Fragola, CPCU, ARM, CIC | Sr. Vice President, Business Development | Sales**
Early, Cassidy & Schilling, Inc. | www.ecsinsure.com
15200 Omega Drive, Suite 100, Rockville, MD 20850
(D):240-864-9119 | (M):703-615-4483 | (F):240-864-8119



**Early, Cassidy & Schilling, Inc.**
Commercial Insurance • Risk Management • Surety
Employee Benefits • Executive Benefits

-------- Original message --------
From: Rhoda Barish <rbarish@gavettdatt.com>
Date: 08/05/2015 5:21 PM (GMT-05:00)
To: "Jeffrey L. Hixon" <hixonjl@ecsinsure.com>
Cc: Geoff Gavett <ggavett@gavettdatt.com>
Subject: RE: Bell Aquaculture - Property Loss 7/22/15

**PRIVILEGED AND CONFIDENTIAL ATTORNEY-CLIENT CORRESONDENCE**

Jeff,

BELL0005424

Jeff,

As we discussed, I have researched whether there are any cases construing the "Property Not Covered" provision regarding Animals, which has an exception of, among other things, Animals owned by the insured as "stock" while inside of buildings.

While I might have come up with nothing had I done this research last week, interestingly, I located one case with facts similar to this matter, which was decided just a few days ago by the United States District Court for the Eastern District of Pennsylvania: *Great Lakes Reinsurance (UK) PLC v. Stephens Garden Creations, Inc.,* Civil Action No. 14-539, 2015 U.S. Dist. LEXIS 100827 (E.D. Pa. July 31, 2015). Although the case does not explicitly stand for the proposition that the Bell Aquaculture claim would be covered, it does imply that the damage to the Bell Aquaculture fish stock would be covered under the Commercial Property policy.

In the *Great Lakes* case, the insured, Stephens Garden Creations, Inc. ("Stephens") operated a retail establishment that sold aquatic plants, small fish, decorations, and products for fish, plants, and ponds. Great Lakes issued a Commercial Property Policy which had the same "Property Not Covered" provision providing that Covered Property does not include: "Animals, unless owned by others and boarded by you, or if owned by you, only as 'stock' while inside of buildings." The definition of "stock" in the Stephens' policy endorsement was "merchandise held in storage for sale" rather than an older definition which was "merchandise held in storage OR for sale" (as in Bell Aquaculture's policy).

Stephens' property consisted of four separate buildings. Of relevance to the Bell Aquaculture claim, Building 1 was used for the propagation of plants and storage of fish, and other products and Building 2 contained Stephens' primary retail space and two fish selection systems that housed fish offered for sale to the public. An accidental fire destroyed Building 2 and caused damage to the other buildings.

First, with respect to Building 2 which contained the fish selection systems that housed fish offered for sale to the public, Great Lakes paid Stephens' Business Personal Property claim. Thus, the insurer accepted that the fish that were offered for sale to the public were considered stock and therefore came within the exception of the "Animals Not Covered" provision. The court, therefore, did not even have to address that issue as the insurer did not dispute that the claim for those fish was covered.

With respect to the claim regarding the fish in Building 1, which were the insured's koi fish that perished in the fire, the insurer denied coverage, finding that those fish were not fish in stock. The court, in ruling on the insurer's motion for summary judgment with respect to the issue of whether the insurer acted in bad faith, ruled that the insurer did not act in bad faith in denying coverage with respect to the koi fish because the evidence reasonably showed that the fish were not "stock" in that: (1) the insured had testified that the koi fish in Building 1 weren't intended for sale; (2) the fish listed for sale on Stephens' website ranged in price from $10 to $250, while the koi fish listed on the inventory submitted to Great Lakes ranged in price from $450 to $2,750; and (3) Stephens did not provide any documentation to Great Lakes showing that it sold the koi fish at issue to customers. Therefore, the insurer determined that the koi fish were not "held in storage for sale" and thus not "stock" under the policy, but rather the insured's personal fish excluded under the policy.

While the court did not decide whether the koi fish should have been covered under the policy, but only that Great Lakes had a reasonable basis for denying coverage, this case nevertheless provides support that in the circumstances of the claim involving Bell Aquaculture - if the evidence shows that the insured did sell the fish it stored to customers, the logical implication is that there would be coverage under the policy even under the definition of "stock" in that policy. Moreover, the court noted, in a footnote, that the definition of "stock" in the Stephens' policy endorsement was "merchandise held in storage for sale"

BELL0005425

rather than the older definition which was "merchandise held in storage OR for sale". The policy issued to Bell Aquaculture defines "stock" as the second broader definition. Thus, presumably, under that definition, the outcome as to the koi fish would have been different – as long as they were held in storage, even if not for sale, they would have been covered under the policy. In addition, the fact that the insurer did not contest coverage with respect to the contents of Building 2 lends further support to Bell Aquaculture's claim in the current matter.

I have attached a copy of the court's decision. Please let me know if you have any questions or concerns or would like to discuss this further.

Rhoda

**Rhoda S. Barish**
**Attorney**
Email: rbarish@gavettdatt.com
_____

<span style="color:red">Gavett, Datt & Barish, P.C.</span>

ATTORNEYS AT LAW

Metro Executive Park 1 ♦&#x0;&#x0;htmltag92 15850 Crabbs Branch Way ♦&#x0;&#x0;htmltag92 Suite 330
Rockville, MD 20855•2675

Phone: 301-948-1177 ♦&#x0;&#x0;htmltag92 Fax: 301-948-4334 ♦www.gavettdatt.com
_____

*This message may contain confidential and legally privileged information. If you are not the intended recipient, please notify us by reply email and delete this message and any attachments. Unauthorized disclosure, conversion to hard copy, copying, distribution, or retransmission is strictly prohibited and may be unlawful.*


**From:** Jeffrey L. Hixon [mailto:hixonjl@ecsinsure.com]
**Sent:** Wednesday, August 05, 2015 2:19 PM
**To:** Geoff Gavett
**Subject:** Bell Aquaculture - Property Loss 7/22/15

Geoff

Per our conversation, we are requesting a review of coverage with respects to 7/22/15 loss insured by our insured, Bell Aquaculture. I have provided what seems to be the simplest version of the incident below. While we believe we seem to be okay with a covered cause of loss triggering an equipment breakdown claim, Westfield has not formally committed to this. FYI, while the policy is Westfield, Hartford Steam Boiler is adjusting the equipment portion of the claim. While that it is still a concern, our biggest concern is Westfield appears to be leaning toward denying coverage for the fish (about 80 to 90% died) citing that these are animals, which are excluded. Our position is they are stock, thus covered.

*The main transfer switch which is attached to the insured's building caught fire and the power went off. The generators did not kick in so the water filtration system for the fish hatchery shut down. They have since been able to get the generators working, but the damage to the fish had been done.*

We have confirmed that the transfer switch is the insured's property and located on the property. 2 of the 3 phases of service were affected. Everything we have heard is there appears to be a failure of the switch. Does not appear to be anything abnormal from the utility.

Bottom line, switch failed – generators did no kick on (appear to recognize that the switch failed).

http://www.bellaquaculture.com/favicon.ico

Below is who the insured has on hand as to counsel. She appears to have coverage analysis experience.

http://www.icemiller.com/people/angela-p-krahulik/

Thanks as always for your assistance.

Thank you



Jeffrey Hixon, CRM, ALCM
Vice President Risk Control and Claims
phone - 240-864-9169; fax - 240-864-8169
hixonjl@ecsinsure.com

15200 Omega Drive, Rockville, MD 20850
www.ecsinsure.com

**Early, Cassidy & Schilling, Inc.**
Commercial Insurance • Risk Management • Surety
Employee Benefits • Executive Benefits

The information contained in this message is privileged and/or confidential information intended only for the use of the individual entity named above.

If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of the communication is strictly prohibited.

If you have received this communication in error, please immediately notify me by telephone at 301.948.5800.

Please note, coverage cannot be added, changed or deleted until confirmed by a licensed Early, Cassidy & Schilling, Inc. staff member.

The information contained in this message is privileged and/or confidential information intended only for the use of the individual entity named above.

If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of the communication is strictly prohibited.

If you have received this communication in error, please immediately notify me by telephone at 301.948.5800.

Please note, coverage cannot be added, changed or deleted until confirmed by a licensed Early, Cassidy & Schilling, Inc. staff member.

BELL0005427