UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WESTFIELD INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-02269-TWP-MJD |
| | ) | |
| TCFI BELL SPE III LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| The Hartford Steam Boiler Inspection and Insurance Company, | ) | |
| | ) | |
| Interested Party. | ) | |

**ORDER ON MOTIONS**

This matter is before the Court on Defendants' *Motion to Compel Discovery Regarding Similar Claims and Reserves* [Dkt. 154] and Plaintiff Westfield Insurance Company ("Westfield") and Non-Party Hartford Steam Boiler Inspection and Insurance Company's ("HSB") *Cross Motion for Protective Order Barring or Limiting Discovery Regarding Similar Claims and Reserves* [Dkt. 164]. For the reasons set forth below, the Court **GRANTS** Defendants' Motion [Dkt. 154] and **DENIES** Plaintiff's Motion [Dkt. 164].

**I.   Background**

This insurance coverage action arises from a fire caused by the failure of an automatic transfer switch at Defendant Bell Aquaculture's ("Bell") fish farm that resulted in the death of approximately 800,000 fish. Bell's insurer, Westfield Insurance Company, denied coverage for the loss of the fish on the basis that the Equipment Breakdown Coverage specifically excludes "any

1

loss or damage to animals." [Dkt. 99 at 2.] Bell asserts the so-called "animals exclusion" does not apply to Bell's fish, which were being kept as stock. Whether the animals exclusion applies to this dispute is the subject of a motion for partial summary judgment pending before the Court. [Dkt. 99.]

Bell now seeks an order compelling Westfield to produce documents and deposition testimony regarding similar claims involving the loss of fish (or other animals kept as stock), as well as information regarding reserves set in connection with Bell's claims. In response, Westfield seeks a protective order barring the discovery sought by Bell.

## II.     Discussion

Prior to addressing the merits of these motions, the Court notes Westfield's threshold argument that Bell's motion is untimely and impermissible because it seeks discovery after the liability phase of discovery closed and seeks discovery beyond that which was authorized by the Court during the discovery dispute conference. Neither argument is persuasive. The Case Management Plan sets a deadline by which discovery must be *served*, not a deadline by which a party must file a motion to compel. [See Dkt. 41 at 8-9.] Further, the Court did not limit Bell's motion to the disputed deposition topics as argued by Westfield. The scope of Bell's motion is proper and will be addressed by the Court in full. While there appeared to be some confusion between the parties in the initial briefs as to the scope of Bell's requests, Bell clarified on reply that it seeks the following: an order compelling Westfield and HSB to re-produce certain witnesses to testify regarding their coverage determinations for similar claims; and the re-production of certain documents without redacting information related to loss reserves on Westfield's claim. [Dkt. 170 at 6.]

### A. Deposition Testimony Regarding Similar Claims

In February 2018, Bell served Rule 30(b)(6) Deposition Notices to Westfield and HSB. [Dkt. 156-7 and Dkt. 156-8.] Westfield and HSB objected to certain deposition topics, including those addressing coverage decisions for other claims for loss of fish or animals under the EBC Endorsement or coverage forms similar to those used in the policy held by Bell. [Dkt. 156-11.] Westfield (on its own behalf and on behalf of HSB) argued such questions were overbroad and burdensome, and not relevant to Bell's claim until there is a ruling on the pending cross-motions for summary judgment on the animals exclusion. [Dkt. 156-11.] The parties did not resolve the dispute prior to depositions, resulting in certified questions from both Westfield's and HSB's Rule 30(b)(6) depositions and the deposition of Timothy Call, the Westfield adjuster on Bell's claim. [Dkt. 155 at 5.]

Bell now requests the Court order the insurance carriers to re-produce witnesses to testify as to:

| | |
|---|---|
| Westfield: | Westfield's coverage decisions for other claims for loss of fish or animals under coverage forms similar to those used in Bell's policy. [Dkt. 156-7 at 7; ¶25.] |
| HSB: | HSB's coverage decisions or involvement in the coverage decisions for other claims for loss of fish or animals under the EBC Endorsement or coverage forms similar thereto. [Dkt. 156-8 at 7; ¶24.] |

Westfield and HSB continue to object, arguing the topics are not limited to a time period, to a specific type of loss, to a specific type of equipment breakdown, or to the nature of Bell's operation. The carriers further argue that compliance with the deposition topics would create an undue burden "given how the Companies maintain their claims records." [Dkt. 165 at 7.] Again, Westfield and HSB's arguments are not persuasive. The deposition topics are limited to coverage

decisions for other claims for loss of fish or animals in the face of similar policy language, which the Court finds to be a significant limitation based upon the nature Bell's business. It is not necessary to have further limited the topics to a type of equipment breakdown or geographical area. How the carriers handled claims for loss of fish (or other animals held as stock) by holders of similar policies is relevant to Bell's bad faith claim. *See Travelers Indem. Co. of Connecticut v. College 60 Minute Cleaners, Inc.*, 2016 WL 10520837 (finding discovery into similar insurance claims is relevant to an insured's bad faith claim against insurer).

      Additionally, Westfield and HSB's undue burden argument is without merit. Undue burden or expense, actual or potential, must be shown by "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981). The carriers submitted affidavits detailing the hardship they assert would result if compelled to respond to these two deposition topics. For example, HSB asserts it does not maintain claim records based upon the type of loss, such as loss of fish or animals. [Dkt. 168 at 3.] Both Westfield and HSB assert recent transitions to new electronic claims systems in 2014 pose difficulties in searching files for claims that predate the electronic systems. As the loss occurred in July of 2015, the Court will impose a time period on the Rule 30(b)(6) deposition topics that coincides with the new claims systems to minimize any burden on the carriers.

      Bell may seek discovery regarding any nonprivileged matter that is relevant to its claims and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The information sought in these deposition topics is relevant to Bell's bad faith claim, which is sufficient to compel discovery in the absence of a significant burden to Westfield and HSB, and no such

burden has been demonstrated here when the requests are limited to the period after transition to the new electronic claims systems.

Bell's motion with regard to the deposition topics is **GRANTED**; Westfield and HSB's motion for protective order regarding the same is **DENIED**. The parties shall resume the Rule 30(b)(6) depositions of Westfield and HSB and the deposition of Timothy Call at a mutually agreeable time and location in Indianapolis, Indiana **on or before June 6, 2018**.

The scope of the Rule 30(b)(6) deposition of Westfield shall be limited to Topic 25 [Dkt. 156-7 at 7; ¶25] (as well as the loss reserves information as addressed below), confined to the time period of January 1, 2014 to present. As Mr. Call has no obligation to prepare for the deposition (as compared to depositions conducted under Rule 30(b)(6)), the Court imposes no temporal limitation upon the scope of Mr. Call's examination on this issue.

The scope of the Rule 30(b)(6) deposition of HSB shall be limited to Topic 24 [Dkt. 156-8 at 7; ¶24] (as well as the loss reserves information as addressed below), confined to a time period of October 2014 to present.

### B. Loss Reserves

#### 1. Redacted Documents Already Produced

Westfield and HSB object to discovery directed to the carriers' respective loss reserves set for Bell's claim, and redacted such information from documents previously produced. Bell seeks unredacted versions of these documents relating to loss reserves, arguing the information is relevant to the insurers' interpretation of their own policy provisions and to Bell's bad faith claim. The carriers assert the reserves are purely precautionary estimates set without an evaluation of the merits of the claim, therefore were properly redacted as not relevant to Bell's claim.

The carriers are correct that some courts have found loss reserve information to be not discoverable in denial of coverage claims because loss reserves are based on business risk and regulatory compliance, not the insurer's opinion on potential liability. *See Indianapolis Airport Authority v. Travelers Property Cas. Co. of America*, 2014 WL 7360049, *6 (S.D. Ind. 2014). However, courts in this district have permitted such discovery in the presence of a bad faith claim, such as Bell's counterclaim here. For example, in *Woodruff v. American Family Mutual Ins. Co.*, the undersigned Magistrate Judge found the insurers' reserve-related documentation was relevant to how the claim was processed, handled, and analyzed. 219 F.R.D. 239, 250 (S.D. Ind. 2013). This Court noted in *Woodruff* that it had no basis for finding the information wholly irrelevant or for finding that the burden of revealing the information outweighed any potential relevance. *Id*.

Other courts in this district have drawn a distinction between requiring an insurer to find and produce loss reserve documents and prohibiting the insurer from redacting such information from documents already being produced. For example, in *Cummins, Inc. v. Ace American Ins. Co.,* the court ordered the insurer to remove redactions of loss reserves information in documents previously produced, but declined to order the insurer to find and produce additional documents. 2011 WL 130158, at *12 (S.D. Ind. Jan. 14, 2011). Magistrate Judge Lynch noted that "[R]edactions from documents merely because they discuss or relate to Reserves are not appropriate. Discussions about coverage in connection with loss reserves are not wholly irrelevant to the claims and defenses in this case, are not necessarily privileged, and to the extent that the information is somehow confidential or proprietary, its production can be made subject to an appropriate protective order. Further, the court is capable of curtailing use of reserve information to unfairly confuse issues in this case." *Cummins*, 2011 WL 130158 at *12.

Westfield and HSB attempt to distinguish *Cummins* by noting that the court denied the insured's request to compel *additional* reserves discovery. [Dkt. 165 at 24.] This attempt blatantly ignores the distinction between compelling additional discovery and the propriety of redactions in previous discovery set forth by Magistrate Judge Lynch, who later reiterated this distinction: "The redacted loss reserves information in *Cummins* was relevant and not privileged. Because of the low level of relevance of the information, the court did not require the producing party to search out and produce all documents regarding loss reserves, but it also did not permit the producing party to hide the information in documents that were otherwise being produced." *Brandt Indus. Ltd. v. Pitonyak Mach. Corp.*, 2011 WL 3889238, at *2 (S.D. Ind. 2011).

Here, as in *Cummins*, the carriers have produced documents relevant to Bell's bad faith claim after redacting the loss reserves information based solely on the carriers' determination that the reserves information is irrelevant. Bell seeks only the unredacted versions of these documents; not additional documents relating to reserves. Consistent with this Court's ruling in *Woodruff*, and Magistrate Judge Lynch's rulings in *Cummins* and *Brandt*, the Court finds Westfield/HSB's redactions of loss reserve information to be improper. Consequently, the Court **GRANTS** this portion of Bell's motion and **DENIES** this portion of Westfield/HSB's motion. The carriers shall re-produce copies of documents previously produced, with reserve information unredacted, **on or before May 30, 2018**.

2. *Deposition Testimony Regarding Loss Reserves*

The parties' dispute over the discoverability of loss reserves information also resulted in Bell's certification of multiple reserves-related questions during the Rule 30(b)(6) depositions of Westfield's and HSB's witnesses. As discussed above, the Court finds such information to be relevant to Bell's bad faith claim and therefore discoverable. Relying upon a case from the

Northern District of Indiana, Westfield and HSB argue that testimony concerning reserves set *after* the filing of this lawsuit is not relevant and should be prohibited. See *G & S Metal Consultants, Inc. v. Cont'l Cas. Co.*, 2014 WL 5431223, at *2 (N.D. Ind. 2014).

In that case, G&S pursued loss reserves discovery not to support its bad faith claim, as Bell is here (the discovery for which had closed two years prior), but in its defense of a fraud claim asserted by the insurer. In denying G&S's motion to compel loss reserves testimony, the court noted that any changes in the loss reserves since the lawsuit was filed was not relevant to the insurer's claim of fraud. Contrary to Westfield's assertion, *G&S* does not stand for the proposition that Indiana courts distinguish between the discoverability of reserves set before litigation and those set after the filing of a lawsuit. The carriers provided no additional cases to support this argument and the Court could likewise locate none. Additionally, the Northern District's holding in *G&S* does not alter the Court's analysis of the relevance of loss reserves to claims of bad faith discussed above. The Court **GRANTS** Bell's motion and **DENIES** Westfield/HSB's motion with regard to re-producing the Rule 30(b)(6) witnesses to testify as to loss reserves. When the parties resume the Rule 30(b)(6) depositions, Bell may inquire as to the reserves set in connection with Bell's claim.

### III.    Conclusion

Based on the foregoing, Bell's *Motion to Compel Discovery Regarding Similar Claims and Reserves* [Dkt. 154] is **GRANTED** and Defendant Bell Aquaculture LLC's ("Bell") and Non-Party Hartford Steam Boiler Inspection and Insurance Company's ("HSB") *Cross Motion for Protective Order Barring or Limiting Discovery Regarding Similar Claims and Reserves* [Dkt. 164] is **DENIED**.[1]

---

[1] Having granted Bell's motion to compel, and consistent with the Court's order at Docket No. 161, Bell's response to Westfield's Motion for Partial Summary Judgment is due **on or before June 18, 2018**. [Dkt. 161.]

This dispute arose prior to the depositions, yet the parties elected to proceed with the depositions before filing their motions to resolve the dispute. As such, costs and fees relating to the motions will not be awarded and the parties and deponents shall bear their own costs and fees to resume the depositions.

SO ORDERED.

Dated:  25 MAY 2018

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system.