**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| WESTFIELD INSURANCE COMPANY, )<br>      Plaintiff, )<br> )<br>    v. )<br> )<br>BELL AQUACULTURE, LLC & )<br>TCFI BELL SPE III, LLC, )<br>      Defendants/Third-Party Plaintiffs, )<br> )<br>    v. )<br> )<br>EARLY, CASSIDY & SCHILLING, INC., )<br>      Third-Party Defendant. ) | No. 1:16-cv-02269-TWP-MJD |

**BELL AQUACULTURE LLC'S BRIEF IN SUPPORT OF ITS MOTION
TO EXCLUDE OPINIONS AND TESTIMONY OF ROBERT J. WESSELER**

The opinions and testimony of Plaintiff/Counterclaim Defendant Westfield Insurance Company's ("Westfield") proposed claims handling expert, Robert J. Wesseler, fail to meet the standards set forth in *Daubert* for several key reasons. Specifically, Mr. Wesseler's proffered testimony is neither relevant nor reliable, as it is based on an incorrect "industry standard," and the facts or data underlying Mr. Wesseler's opinions are not connected to his experience.

In response to Defendant/Counterclaim Plaintiff/Third-Party Plaintiff Bell Aquaculture, LLC's ("Bell") claim that Westfield breached its duty of good faith and fair dealing, Westfield retained Mr. Wesseler to "provide [his] opinion regarding the loss investigation and claim handling by Westfield . . ., with regards to a loss presented by Bell Aquaculture." (Dkt. 246-1, Expert Report of Robert J. Wesseler ("Wesseler Report") at 2.) According to Mr. Wesseler, because Westfield allegedly did not violate Indiana's Unfair Claim Practices Act, Ind. Code § 27-4-1-4.5 (the "Act"), Westfield's "[i]nvestigation and claim handling . . . was proper and within the industry standards." (Dkt. 246-1, Wesseler Report at 10.) However, the Act does not

form the basis for Indiana's common law tort of breach of good faith and fair dealing – making Mr. Wesseler's opinions irrelevant.

Similarly, Mr. Wesseler's opinions fail to meet the requirement of reliability. Although Mr. Wesseler may have relevant insurance industry experience, he has not provided the Court with the necessary link between such experience and his opinions as to Westfield's conduct in this case. Given the irrelevance and unreliability of Mr. Wesseler's opinions, his testimony at trial would be unhelpful (and confusing) to the jury's determination of whether Westfield acted in bad faith when it investigated and adjusted Bell's insurance claim. For these reasons, and the reasons set forth in detail below, the Court should exclude Mr. Wesseler's Report, opinions, and testimony in their entirety.

## **LEGAL STANDARD**

The proponent of an expert's testimony bears the burden of proving its admissibility by a preponderance of the evidence. *Lewis v. CITGO Petro. Corp.,* 561 F.3d 698, 705 (7th Cir. 2009). The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the principles announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Smith v. Ford Motor Co.*, 215 F.3d 713, 717-18 (7th Cir. 2000). Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The district court must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. Doing so, the district court must act as a "gatekeeper" and ensure that the expert testimony satisfies Rule 702's requirements. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013). The trial court's gatekeeping function requires more than simply taking the expert's word for it. *See* Fed. R. Evid. 702 Advisory Committee's Notes (2000 Amends.) ("The expert's testimony must be grounded in an accepted body of learning or experience or in the expert's field, and the expert must explain **how the conclusion is so grounded**") (emphasis added); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.").

For purposes of evaluating whether an expert's testimony is both relevant and reliable, the Seventh Circuit has set forth a three-step analysis: (1) the witness must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying the testimony must be scientifically reliable; and (3) the testimony must assist the trier of fact to understand the evidence or determine a fact in issue. *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007) (internal citations and quotations omitted).

With respect to the relevance of an expert's proffered testimony, since "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it," *Daubert*, 509 U.S. at 595 (citation omitted), a district court must ensure an expert's proffered testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *see also Barefoot v. Estelle*, 463 U.S. 880, 926–27, 901 & n.8 (1983) (Blackmun, J., dissenting) (It is "widely acknowledged" that expert testimony may "impres[s] lay jurors[,

3

who] tend to assume it is more accurate and objective than lay testimony."). The question of relevance to an issue is a question of substantive state law. *Stollings,* 725 F.3d at 767. Expert testimony that is contrary to law is "necessarily unhelpful and risks confusing and misleading the jury." *Viamedia, Inc. v. Comcast Corp.,* 335 F. Supp. 2d 1036, 1065 (N.D. Ill. 2018).

In assessing reliability, the district court must ensure that the expert used a valid methodology, sufficient data justified the use of the methodology, and the expert applied the methodology appropriately. *Id.* at 765. And while experience alone may provide a sufficient foundation for expert testimony, the expert "must explain how that experience leads to the conclusions reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* Where there is no "link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support," *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003), the expert should be excluded.

## ARGUMENT

**A.  Because Mr. Wesseler employs an improper "industry standard," his proffered testimony will not be helpful to the jury's determination of whether Westfield acted in bad faith.**

Mr. Wesseler's Report reflects that his principal conclusion is that Westfield engaged in "no unfair or improper elements of loss investigation and claim handling . . . nor unfair claim practices" when investigating and adjusting Bell's insurance claim. (Dkt. 246-1, Wesseler Report at 15.) At his deposition, Mr. Wesseler explained that in his opinion, there were no unfair or improper elements of loss investigation and claim handling **because** Westfield did not employ any unfair claim practices, as set forth in the Act.[1] (Dkt. 246-2, Deposition of Robert J. Wesseler

---

[1] Mr. Wesseler's opinions regarding whether Westfield complied with or violated the Act amount to legal conclusions which are not an appropriate subject of expert testimony. *Good Shepherd Manor Found., Inc. v. City of Momence,* 323 F.3d 557, 564 (7th Cir. 2003) (excluding expert whose proffered testimony "was largely on purely legal matters and made up solely of legal conclusions", namely that the city

4

("Wesseler Dep.") at 122:25–123:9). That is, according to Mr. Wesseler, the Act sets forth an insurer's *only* duties to its insured with respect to claims handling and, thus, is the appropriate standard of care:

> [Q:] What are an insurance company's duties to its insured?
>
> [A:] If you go back and start with the unfair claims practices, it pretty much lays out what an insurance company is expected to do.
>
> * * *
>
> [Q:] As far as industry standards, you say that Westfield's investigation and claims handling did not violate the Unfair Claims Practices Act?
>
> [A:] Correct.
>
> [Q:] And that's the only written standard you considered? . . .
>
> [A:] Yes.
>
> * * *
>
> [Q:] Any other industry practices or publications you're considering in coming to that opinion?
>
> [A:] That's the primary one that everybody is on board with.

(Dkt. 246-2, Wesseler Dep. at 47:22–48:1, 99:15-100:2, and 123:6-9. *See also id.* at 83:18-22 ("An insurance company's [] responsibility – we're going back to looking at the unfair claim practices – is to deal in a fair and timely manner with the insured"), 84:8-15 ("The Unfair Claims Practices Act gives specifics of what you don't do. A basic standard that's in the insurance

---

violated the FHAA). Here, it is Mr. Wesseler's opinion that so long as an insurance company follows the Act, "everything else [they] do must be correct or at least within the law." (Dkt. 246-2, Wesseler Dep. at 48:10-12.) And where Mr. Wesseler opines and/or testifies that Westfield did not violate the Act, (*id.* at 99:15-18), he's implicitly telling the jury there's no bad faith, which is improper expert testimony. *See, e.g., RSUI Indem. Co., Inc. v. Vision One, LLC,* No. C08-1386-RSL, 2009 WL 5125420, at *1 (W.D. Wash. Dec. 18, 2009) (finding expert's legal conclusions inadmissible, "including his conclusion that RSUI acted in 'bad faith' and violated [Washington's unfair claims settlement practices statute]."); *Holman Enters. v. Fidelity & Guar. Ins. Co.,* 563 F. Supp. 2d 467 (D.N.J. 2008) (striking expert because, among other things, his "major thesis, that the [insurance companies] did not breach the covenant of good faith and fair dealing, [was] an obvious conclusion of law inappropriate for an expert report").

industry is a requirement that's accepted by the industry . . . That's just a basic underlying concept that's been in existence").)

But that's not the law in Indiana. Under Indiana law, the Act does not provide a private cause of action for an insurer's failure to comply with certain unfair claim settlement practices enumerated by the Act. *See Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 519 n.1 (Ind. 1993); *Nealy v. Am. Fam. Mut. Ins. Co.*, No. 1:09-cv-330-TAB-LJM, 2010 WL 4789149, at *2 n.1 (Nov. 17, 2010). Rather, an insurer has an affirmative duty to deal with its insured in good faith, and there is a cause of action for the tortious breach of that duty. *Erie*, 622 N.E.2d at 519. "The insurer's obligation of good faith and fair dealing includes an obligation to refrain from causing an unfounded delay in making payment; making an unfounded refusal to pay policy proceeds; exercising an unfair advantage to pressure an insured into settlement of his claim; and deceiving the insured." *Hoosier Ins. Co. v. Audiology Found. of Am.*, 745 N.E.2d 300, 310 (Ind. Ct. App. 2001). However, "these obligations do not comprise an exhaustive list of an insurer's duties under the obligation of good faith and fair dealing." *Gooch v. State Farm Mut. Auto. Ins. Co.*, 712 N.E.2d 38, 40 (Ind. Ct. App. 1999) (citing *Erie*, 622 N.E.2d at 519).

Nevertheless, Mr. Wesseler's opinions turn **only** on the question of whether Westfield complied with the Act. Specifically, Mr. Wesseler testified that:

> [Q:] The Unfair Claims Practices Act talks about prohibited actions by an insurance company; right?
>
> [A:] Right.
>
> [Q:] What affirmative duties does an insurance company have to its insured?
>
> [A:] This is written by the legislature, so I really – they basically said these are things you don't want to do. **So if you don't do these, everything else you do must be correct or at least within the law.** This was actually written in negative format, which you see a lot of legislation is.

6

> [Q:] Your testimony is that if you do not engage in any of these unfair claims handling practices, you have satisfied your duties to your insured?
>
> [A:] **Yes.**

(Dkt. 246-2, Wesseler Dep. at 48:2-18) (emphasis added). According to Mr. Wesseler, the Act sets forth the appropriate standard of care in Indiana for determining whether Westfield complied with its duty of good faith and fair dealing. (*See id.* at 61:2-11.) However, under Indiana law, a party cannot bring a direct claim for alleged violation of the Act, *Erie,* 622 N.E.2d at 519 n. l; *Nealy,* 2010 WL 4789149, at *2 n. 1, which renders Mr. Wesseler's use of the Act as the standard of care in this case inappropriate. *See, e.g., Stewart v. Brotherhood Mut. Ins. Co.,* No. 16-cv-488-JED-FHM, 2018 WL 4092018, at *6 (N.D. Okla. July 10, 2018) (Oklahoma's version of the UCSPA "does not establish standards of care or standards of conduct for measuring whether an insurer has violated its duty of good faith and fair dealing and it does not function as an appropriate guide for a jury to determine bad faith") (internal citations omitted); *Melancon v. USAA Cas. Ins. Co.,* 849 P.2d 1374, 1377 (Ariz. 1992) ("The provisions of the [Arizona USCPA] are operational, much like the ethical considerations governing the conduct of attorneys and other professionals. The provisions are expressly not a standard of conduct against which an insurer's conduct in handling an individual claim is to be measured . . .").[2]

Furthermore, Mr. Wesseler testified that he does not believe an insurer has a fiduciary duty to its insured under Indiana law, nor does he believe that an insurance company should put the interest of the insured above its own. (*See* Dkt. 246-2, Wesseler Dep. at 48:24-49:4, 50:7-9.)

---

[2] Indeed, courts have applied a similar analysis with respect to other statutes. *See, e.g., Haywood v. Novartis Pharmaceuticals Corp.,* 298 F. Supp. 3d 1180, 1191 (N.D. Ind. 2018) (internal quotations omitted) ("utilization of HIPAA as an ordinary negligence 'standard of care' is tantamount to authorizing a prohibited private right of action for violation of HIPAA itself"); *Cali v. Danek Medical, Inc.,* 24 F. Supp. 2d 941, 954 (W.D. Wis. 1998) (finding that because there was no private right of action or implied private right of action to enforce FDA regulations and where Congress evidenced no intention to create a private standard of care, negligence per se could not be based on the statute).

Mr. Wesseler's "opinions" to this effect are contrary to Indiana law. *See generally Erie,* 622 N.E.2d at 518-519.

Because Mr. Wesseler's Report and testimony relies upon an incorrect understanding of Indiana law and the appropriate standard of care, it simply is neither helpful nor admissible. *See Viamedia,* 335 F. Supp. 2d at 1065 ("Expert testimony [] must be consistent with the law; otherwise it is necessarily unhelpful . . ."); *Armstead v. Allstate Prop. & Cas. Ins. Co.,* No. 1:14-cv-586-WSD, 2016 WL 4123838, at *7 (N.D. Ga. July 1, 2016) ("[W]hile certain provisions of the UCSPA may go to whether [the insurer] had cause for resisting and delaying payment, the mere fact that [the insurer] did or did not comply with the UCSPA is not relevant.");[3] *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.,* 387 F. Supp. 2d 794, 806 (N.D. Ill. 2005) ("Expert opinions that are contrary to law are inadmissible."). Therefore, the Court should exclude Mr. Wesseler's proffered opinions. *See Imperial Trading Co., Inc. v. Travelers Prop. Cas. Co.,* 654 F. Supp. 2d 518, 522-23 (E.D. La. 2009) (excluding otherwise qualified expert where "his process for coming to conclusions [was] opaque," his report was "rife with legal conclusions," and several of his opinions were "legally incorrect"); *see also Loeffel Steel Prods., Inc.,* 387 F. Supp. 2d at 806 (excluding expert whose opinion relied on a definition of economic loss that was contrary to law); *Noskowski v. Bobst SA,* No. 04-C-0642, 2005 WL 2146073, at *5 & 7 (E.D. Wis. Sept. 2, 2005) (excluding expert's testimony as irrelevant and unreliable where expert invoked an incorrect legal standard).

---

[3] The *Armstead* court also determined that "referencing alleged violations of the UCSPA would be more prejudicial than probative" under Fed. R. Evid. 403 and, thus, prohibited plaintiff from offering evidence that the insurer did not comply with the UCSPA. 2016 WL 4123838, at *7. Likewise here, where Bell brought a common law claim for breach of good faith and fair dealing, Westfield should not be permitted to hide behind the shield of the Act which, under Indiana law, provides no private right of action in the first place. That, like the plaintiff's desired use in *Armstead*, would be extremely prejudicial to Bell and supports exclusion of Mr. Wesseler's testimony and report pursuant to Fed. R. Evid. 403.

### B. Mr. Wesseler's opinions are not reliable.

Mr. Wesseler's reliance on the Act as the appropriate standard of care calls into question the reliability of his opinions as a whole, *see Noskowski,* 2005 WL 2146073, at * 5 (reliance on improper legal standard "casts the reliability of [expert's] opinion into doubt"), particularly here where Mr. Wesseler has not relied on **any** other written industry standards, regulations, or policies in forming his opinion. (Dkt. 246-2, Wesseler Dep. at 62:13-18, 94:18-23, 99:15-100:2.) Rather, Mr. Wesseler relies **only** on "his experience" in the industry, without pointing to any studies, data, publications or peer-reviewed materials that support his opinion.[4] (*See generally id.* at 94:18-23: ([Q:] "When you say that Westfield properly considered all of these things, what standard are you applying?" [A:] "The standard of experience." [Q:] "No code or document standard." [A:] "No.").) In addition, Mr. Wesseler opined that "[b]ased on [his] experience, Westfield exceeded industry standards by making such large [advance] payments, with minimal information, and before the carriers completed their investigation." (*Id.* at 78:7-11.). Yet, when questioned as to the specific "industry standards" upon which he was relying, Mr. Wesseler couldn't name any:

---

[4] In his Report, Mr. Wesseler pointed to a single 2017 article from the "DRI In-House Defense Quarterly," which he said "addresses the claim handling practices and what should be considered in first-party claims." (Dkt. 246-1, Wesseler Report at 4-5.) It turns out, however, that not only did Mr. Wesseler get the article from Westfield's counsel, (Dkt. 246-2, Wesseler Dep. at 39:21-40:3), but the article also focuses almost exclusively on suspicious or fraudulent claims, which Mr. Wesseler admits were not present here. (*See generally id.* at 39:12-47:7.) Plus, later, Mr. Wesseler admitted that the article "really doesn't relate to the duties [of an insurance claims handler to its insured]." (*Id.* at 57:18.) Because – by Mr. Wesseler's own admission – reference to fraud is irrelevant, and because courts are wary of experts, armed with information from counsel, of becoming a "mouthpiece" or "parrot[ing]" such information back in the form of an opinion, at a minimum, any reference to or reliance upon the 2017 article should be excluded. *King-Indiana Forge, Inc. v. Millennium Forge, Inc.*, No. 1:07-cv-00341-SEB-DML, 2009 WL 3187685, at *2 (S.D. Ind. Sept. 20, 2009); *see also Welch v. Eli Lilly Co.*, No. 1:06-cv-0641-RLY-JMS, 2009 WL 700199, *10 (S.D. Ind. March 16, 2009) (expert "served more as a hired mouthpiece than as an independent expert seeking to assist the Court [and his] report is not worthy of credit"); *Lyman v. St. Jude Medical S.C., Inc.,* 580 F. Supp. 2d 719, 726 (E.D. Wis. 2008) (excluding expert testimony as expert should have "independently verified the reliability of the data before opining on plaintiffs' future sales, as opposed to accepting it at the word of St. Jude's counsel").

> [Q:] So you're not referring to any specific document or set of industry standards?
>
> [A:] No ma'am. This is just – no.
>
> [Q:] This is your opinion –
>
> [A:] Yes, ma'am.
>
> [Q:] Based on your experience?
>
> [A:] Mm-hmm. Correct.
>
> [Q:] Based on anything else?
>
> [A:] Just my experience about, you know, the time I spent working in the industry.

(*Id.* at 79:5-15.)

Nor has Mr. Wesseler provided the Court with the necessary link between his experience and his opinions in this case. Other than blanket references to "his experience" (without providing **how** the experience leads to that opinion, **why** that experience is sufficient, or **how** that experience is related to the facts of the case), Mr. Wesseler cannot identify **any** other industry standard, policy, or regulation that would support his opinions. (*See id.* at 99:15-100:2.) In short, "[b]y baldly invoking '[his] expertise' with no explanation of how this expertise led him to reach his opinions, [Mr. Wesseler] fails to provide the Court with any means to assess the reliability of his opinions." *Superior Aluminum Alloys, LLC v. U.S. Fire Ins. Co.,* No. 1:05-cv-207, 2007 WL 1850858, at *7 (N.D. Ill. June 25, 2007) (citing *Zenith Electronics Corp. v. WH-T Broad Corp.,* 395 F.3d 416, 419 (7th Cir. 2005)); *see also* Fed. R. Evid. 702 Advisory Committee's Notes (2000 Amends.) ("If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that

experience is a sufficient basis for the opinion, and how that experience is reliably related to the facts.").

Because an expert who provides "nothing but a bottom line supplies nothing of value to the judicial process," Mr. Wesseler's testimony should be excluded as unreliable. *Zenith,* 395 F.3d at 419; *Holman Enters.,* 563 F. Supp. 2d at 473 ("Without providing any sort of gauge for the basis of his decision, either form his own extensive experience in the industry or some industry standards or guidelines, [expert's] statements do nothing to assist the factfinder"); *State Farm Fire & Cas. v. Jarden Corp. d/b/a Holmes Grp.,* No. 1:08-cv-1506-SEB-DML, 2010 WL 2541249, at *4 (S.D. Ind. June 16, 2010) ("The testimony of a well credentialed expert who employs an undisclosed methodology or who offers opinions lacking analytically sound bases must be excluded") (internal quotation and citation omitted).

## **CONCLUSION**

The Court thus has two separate, yet equally compelling, reasons to exclude Mr. Wesseler, as his opinions are contrary to law and not helpful, and are otherwise unreliable. For these reasons, and the reasons set forth above, Bell respectfully requests that the Court grant its Motion to Exclude the proffered Report, opinions, and testimony of Robert J. Wesseler (Dkt. 243).

Respectfully submitted,

ICE MILLER LLP

/s/ Jenny R. Buchheit
Angela P. Krahulik, #23026-49
Jenny R. Buchheit, #26653-49
Samuel B. Gardner, #32825-29
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282-0200
Telephone: (317) 236-2100
Facsimile: (317) 236-2219
Angela.Krahulik@icemiller.com
Jenny.Buchheit@icemiller.com
Samuel.Gardner@icemiller.com

*Attorneys for Defendant/Counterclaim Plaintiff/
Third-Party Plaintiff Bell Aquaculture, LLC*

# CERTIFICATE OF SERVICE

      I hereby certify that on February 6, 2019, a copy of the foregoing was filed electronically through the CM/ECF system. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system:

Dustin R. DeNeal
Kevin M. Toner
FAEGRE BAKER DANIELS LLC
dustin.deneal@faegrebd.com
kevin.toner@faegrebd.com

*Attorneys for TCFI BELL SPE III LLC*

Michael E. Brown
Casey R. Stafford
KIGHTLINGER & GRAY LLP
mbrown@k-glaw.com
cstafford@k-glaw.com

*Attorney for Early Cassidy & Schilling, Inc.*

Edward W. Gleason
SENAK KEEGAN GLEASON SMITH MICHARUD, LTD.
egleason@skgsmlaw.com

Rebecca J. Maas
Stephen Wheeler
Linda Vitone
SMITH FISHER MAAS HOWARD & LLOYD, P.C.
rmaas@smithfisher.com
swheeler@smithfisher.com
lvitone@smithfisher.com

*Attorneys for Westfield Insurance Company*

      /s/ Jenny R. Buchheit
      Jenny R. Buchheit

ICE MILLER LLP
One American Square
Suite 2900
Indianapolis, IN 46282-0200
(317) 236-2100